Hear ye, hear ye, hear ye. The United States Court of Appeals for the Defending Circuit is now open according to law. God save the United States and this honorable court. Thank you, Mr. Robinson. Good morning, everyone. We are delighted to be with you today. I'm especially delighted to be with my colleagues, Judge Newsom and Judge Branch. It's so nice to the active members of my court. We don't see each other much these days. I assume that counsel are all familiar with our traffic light system. You will get a two-minute warning on your argument time when the color of the clock turns yellow. And then when it And with that, I think we're ready for our first case this morning. So I'll call the case of Dr. Durr versus the Department of Veterans Affairs. Mr. Berman. May it please the court. My name is Craig Berman and I represent Dr. Jacques Durr. My time is limited. I understand that. So let me give you a quick overview of hiring for a chief of medicine position. The process is if it's a competitive selection, then there is a application process. There is a cert list prepared. The cert list goes to the pre-selection panel and the pre-selection panel recommends finalists to receive an in-person interview. Um, in this case, the process was interfered with, tampered with solely to retaliate against Dr. Durr. Uh, Dr. Turia testified in her deposition and it's discussed in our reply. She says, I don't bother with the cert list. I only get involved when finalists are identified. Mr. Berman, this is Judge Newsome. Can I ask you a question? Um, just so that we sort of have in mind what the standard is before we get too deeply into the facts. How, um, if at all in your view, and I'll ask your, um, opposing counsel the same question, does the Supreme Court's decision last term in Babb versus Wilkie affect the standard? Um, we're dealing with a provision that reads almost identically to the ADEA provision. The Supreme Court construed there. And, uh, if the two, if Babb has some application, what does it do to McDonnell Douglas and the convincing mosaic standard under which both parties here really have traveled? In my assessment, based on reading the rehearing briefs that your honor has, um, is under consideration, I would say there's a You could have liability if the process was not free from either discrimination or retaliation. In order to get back pay, there has to be a determination of, but for causation. However, the question is not clear who bears that burden. We believe the agency would under the Lewis case we cite in our brief, and we would offer testimony of Dr. Elamine, who says Dr. Durr probably would have been selected if the process was not tainted by retaliation. But again, that would be for trial. But well, but I guess I mean, I guess I'm trying. We're here on summary judgment. And if we were to conclude that the district court simply proceeded under a standard that no longer governs, would we just, you know, sort of vacate and remand for reconsideration under the Babb standard? I don't think it's necessary because I think if McDonnell Douglas is more demanding than the free from discrimination language. And if you reverse and say, because the district court said there was a prima facie case, that was the first opportunity to retaliate. So I don't think you would have to remand. I think first of all, it's de novo review. Your, your honors are capable of discerning what the facts are. We believe the trial court simply weighed the evidence. He did not consider circumstantial inferences. He actually believed um, Dr. Turia, even when Dr. Pearson and Ms. Siebel contradict her squarely. And I don't want to stray from your question too far, but I don't think remand is necessary. But I mean, what you're asking us for is a trial, right? So yeah, that would require a remand. Yes, we want to remand because we think Judge Moody weighed the evidence. Okay. Did not um, consider the facts even closely in a light, most favorable to Dr. Durr. Um, you know, Ms. Pierce, Dr. Pearson said she was never encouraged to apply before June 16th when the third vacancy announcement was posted. And Ms. Siebel said, I had no idea she was going to be selected on June 23rd. So you have Dr. Turia on an Island saying, oh, I felt that it had to be reposted. But yet her first deposition before the EEO judge was, I can make a selection at any time, window open, window closed, no window at all. I could make a direct hire. And so as to June, we believe we've exposed a direct hire rationale as a pretext for prohibited from starting the process for a competitive higher and switching over to direct higher. No, but that doesn't mean that happened in this case. That's a jury question. This was not a direct hire. A direct hire would have been made before June 16th because Dr. Terry says, and Dr. Terry actually says I wanted to hire her, but I waited for her application to come through. Well, if it's a direct hire, you don't need to wait for an application to come through. So we think she's exposed herself again to unfavorable inferences consistent with the all circumstantial evidence holdings of the U.S. Supreme court that if you are vacillating, if you cannot explain yourself with any degree of credibility, then you are exposing yourself to unfavorable inferences. Dr. Terry says, I don't bother with the cert list, but why is looking at it without finalists? And why is she looking at it in March? Because in March, we know from Ms. Siebel that the cert list, before the cert list was even ready, Dr. Turier told her, and this is all quoted in the briefs, told her there's going to be a third vacancy announcement. This is before, this is after Dr. Durr applies, after she tells him, quote, do not worry, I've received all necessary materials and will upload them for you to receive consideration. She says consideration means being put on a cert list and being referred to the from the March cert list. And even Judge Moody said it's questionable. Can you, Mr. Berman, can you point to any record evidence that Dr. Durrier, if I'm pronouncing that correctly, directed Siebel to leave Dr. Durr off that certification? There was no direct command in the record, and you would not expect that in a circumstantial evidence case. But you would want, you would know, you would have to know who had applied before you made a decision not to make a selection off the second cert list. And in fact, Ms. Siebel says the only reason I uploaded Durr into the applicant pool, which is sort of a backup, um, backup list, which by the way, Dr. Durrier reviewed according to Ms. Siebel frequently too. But nonetheless, the fact that he was excluded under these unusual, because Dr. Durrier herself says he should not have been excluded. So she's sort of saying, see, in my, in our view, the jury could find she's blaming Siebel for excluding him when Siebel had no animus on March 26, when she says, do not worry, I've received all necessary materials. But it's undisputed, it's undisputed that his application was late, correct? No, it's actually just the opposite. She would not have said, do not worry if it was late, she would have said, I cannot upload your materials at all. In fact, the duty under the handbook that we use as an exhibit, 5500 says, if you're untimely, they have to notify you expressly. That did not happen in this case. So that's part of the web that they cannot extricate themselves from. Siebel is the quote subject matter expert. She knows that she admitted if it was untimely, I should have told them. And she says, I didn't tell him because I knew from Dr. T, as she calls her, that there would be a third posting. She actually somewhat nefariously says I was trying to help Dr. Durr. But here's the upshot of that. Ms. Siebel says if he did not untimely. First of all, and then there's no such thing as an untimely application, Judge Branch, because Dr. T always has authority to make a direct hire. So we believe the evidence shows strongly that again, circumstantially that Ms. Siebel advised Dr. Turia about Durr's application. And that there was a decision made to keep him off of the second cert list. And we view that we view this decision as buttress by what happened in June. Because in June, we know that your light is red. So if you could wind up, we'll give you your rebuttal time. Okay. All right. I will. One other thing. She, Turia says I have no inkling to hire Pearson as of June 16th. So I'll, I'll save my time. Right. Thank you. I assume you're opposing counsel is with us. I am your honor. You're ready. May please accord. Jennifer Kareen is for the secretary. Your honors, Dr. Durr failed to carry his burden of showing that the secretary's hiring decision was retaliation. First Durr failed to show that the decision maker here, Dr. Thurrier's reason for hiring Dr. Pearson was false. And that the real reason was retaliation. More important, he's able to show. I'm sorry, Kevin, Judge Newsome. Same question to you. It's important to me to understand at the outset, what standard everybody thinks we're traveling under. What's your position on whether the BAB standard controls this materially identical provision? Your honor, you know, as you know, it's on panel rehearing and until there's a decision there, it's our position that Trask continues to control, but I understand the argument that BAB has the same language in a retaliation case that you might use the BAP for, but we would agree with Mr. Berman here that it doesn't matter in this case because under either standard, we believe that Durr has failed to carry his burden. The district court said there was a prima facie case. This case really turns on whether or not Dr. Durr has proved that the reason for hiring Dr. Pearson was pretextual and that just so I'm clear, for purposes of this case, the secretary does not contest that Durr has a cause of action for retaliation under 2000-16. That he put forth a prima facie case, your honor? He can bring that claim. He can bring the claim for retaliation under 2000-16. I understand what you're saying. Yes, I know the Supreme Court hasn't expressly ruled on that. Yes, not contesting that, your honor. Okay. Thank you. Yes. Just to jump back to a few things here. As Dr. Durr states in his reply, this case really turns on what did Thurier know and when did she know it? The uncontroverted testimony here is that of Thurier, of Rochelle Siebold, and Durr himself is that Thurier didn't know. I want to go right to a couple of things that were said and discussed. One of them is the hiring for the chief of medicine position. The record is very clear, your honors. If you look just at the documents themselves and the testimony, the uncontroverted testimony in 2015, hiring for the chief of medicine position, somebody had to go into the USA jobs and submit their paperwork and Rochelle Siebold testified expressly. There was no distinction between a direct hire and a regular interview and finalists in that process that had been started in June. Either way, the documents had to be in there and if there hadn't been an existing posting, then they would have had to create a direct hire number to allow Dr. Pearson to apply. So to judge Branch's question, there's nothing that prevents the government from switching as they did here. It's very simple. Dr. Thurier liked Dr. Pearson. There's 17 pages of testimony that Dr. Thurier watched her on the job for three months, that the pentad gave her compliments, that Director Klinker thought she was a good candidate. All of them said, gosh, she's made so many great improvements. Dr. Thurier watched her for three months and when she learned in June that Dr. Pearson had applied, she went and did the only thing she could do to tell HR, I want to hire this person and that is go into the system, go into the software and click on that name. That returns it to HR and that enables Rochelle Siebold to tell Dr. Pearson you've been hired and then the system automatically sends out a letter to all of the other applicants. That's it. There's nothing nefarious about it. Nothing at all. There's just simply a posting. Dr. Pearson applied. Dr. Thurier said, ah, great, she's applied. I want her and hired her. That's all. I understand. This is Beverly Martin. I understand all that, but it kind of sounds like a jury argument to me. I mean, that's your construction of the evidence. The whole posting thing was awfully messy here and that's why I have a question about whether a jury ought to hear that sequence of events because he's getting assured, don't worry, I have your documents. I'll see that they're uploaded and then that just doesn't happen. So, you know, to be on the receiving end of that does raise questions. Sure. So you're just just to pick up on Judge Martin's question with respect to the posting, didn't Thurier testify before the EEOC that by the time the third announcement was posted or was published, she had already decided to select Pearson? Yes. And again, you know, two some areas that are a little murky, but not on the material factor on her. And as to that, Dr. Thurier said, yes, I wanted to hire Dr. Pearson. She said she learned from either HR or Dr. Pearson that Dr. Pearson had applied. Well, Dr. Pearson testified that she had to contact HR, Rochelle Siebold is a recruiter, to help her upload the documents. So obviously they knew. It doesn't matter how she knew. She learned that Dr. Pearson was going to apply. Great. Went into the system as soon as the posting was there and Dr. Pearson had applied and clicked on her name. There's nothing more nefarious. And to Judge Martin's point, I understand that it seems messy. So whatever Rochelle Siebold said and thought at the time she was trained and said, yes, if it's late, I shouldn't have uploaded it. But at the time she did think she was helping Dr. Durr. He applied late. There's no getting around that, as Judge Branch said. The system, it's a computer program that Rochelle Siebold has no control over. As of 1159, if you look at the posting that's in the record after the fact, it says this posting is no longer available. You physically can't go in and type in an application after it closes. Dr. Durr did not submit the required applications by the time it closes. Yes, you can email Rochelle Siebold for help, but it still says all over the place, it's your responsibility to make sure that you file all of this by 1159 on March 25th. And he didn't. She uploaded his documents and he was on But by that point, having watched Dr. Pearson do an on the job interview for three months, Dr. Thurrier said, this is who I want. Now she's applied. I will hire her. It's that simple. And there's simply, yes, your honor. So, so I just want to make sure that I'm understanding because with respect to the June non-hire decision. So when you and I were just talking, we understand that Thurrier testified before the EEOC that she knew before the posting that she was going to hire Pearson. But then in her deposition, right, she said, I didn't make the decision until June 23rd, which was after the posting was made. So sort of out of both sides of her mouth, like, which is right. I understand that your honor. And if you look at Dr. Thurrier's testimony, as I said, two years and four years after the events, there are some places like, for example, when did you ask for the report of contact? I think it was June. She says that. And Dura says that all over his briefs, aha, that's an inconsistency. Well, then he asked her here, here's the August email where you asked for it. She says, oh, okay, that must be because I knew it was around the time he filed his complaint. He says, well, his complaint was filed on this date. She says, oh, okay, my mistake. It was August. It's the same kind of thing. She's, she wants Dr. Pearson for the job. She's watched her on the job. The pentad had said she'd be a good candidate. Dr. Pearson applies. She hires her. It's that simple. She exercises her authority. She calls Siebold and says, I want to hire, this is all uncontroverted. I want to hire Pearson. Can I do that? Siebold testifies. She said, yep, you can do that. You have authority. Just return the certificate. Great. The only way she can return a certificate is to go into that system and click on that button. And that's all she did. It's nothing more nefarious than that. So as I understand it, or you can correct me if I'm wrong, obviously, so Dr. Thurier hires Dr. Pearson. And then after that, Ms. Siebold tells Dr. Thurier that I mean, why would Siebold be telling her about applications after she'd already hired somebody? Your Honor, it's for the same reason that she wrote the report of contact. She had two different interactions, well, several interactions with Dr. Thurier. First in March, she said he was, you know, extremely persistent. He was emailing her over and over again. And she was concerned, especially after June, when he came in in person and she said, raised voices. You know, I went out there. He was extremely passionate at first. She said she felt like he was harassing her. She walked that back, but said, you know, he raised his voice. He was extremely passionate. I was really worried that he was going to think that I hadn't helped him. So she wrote the report of contact and she told Dr. Thurier. But all of these issues, there's no jury question here on whether Dr. Thurier knew in advance that Dr. Durr had applied. There's no jury question here on whether Dr. Thurier told Dr. Siebold in March. I mean, there's circumstantial evidence, I think. Your Honor, I think that there are some speculative inferences that Durr is urging on this court, but there's uncontroverted testimony. And it's just simply not reasonable where there's no basis other than, you know, saying that this must be because of this, this must be, well, logic says this, common sense says this. The uncontroverted testimony. You know, I've sat on the trial court for 10 years. I mean, that's what people say to juries, right? I mean, it's, that's not good. That can't carry the day in a summary judgment case, we would, we would submit, Your Honor. It just simply, we have to look at the record. What is a reasonable inference? So let's say, okay, Dr. Thurier, Dr. Thurier in June, wanted to hire Dr. Pearson. And she decided to direct hire her after the, after the cert list had issued. And there is the process was underway. What is the inference to draw from that, that, that she doesn't, she testified and, and Siebel testified, she has nothing to do with when things are posted or for how long they're posted. That's nothing. She has nothing to do with that other than, hey, we probably need a third posting. That's the end of it. HR is completely responsible for, okay, let's post it. It's been a few months. Let's do it in June. We'll do it for three days. It's not unusual in these cases for an advocate for one side to believe their witnesses and not the other side's witnesses. You know, that's kind of a common thing. I understand, Your Honor. I mean, you are certain about what the facts are, but it's, it's a messy record. It is, Your Honor. But what I'm certain about are the material facts. And when you say, you know, one side believes his witnesses, the other side believes her witnesses, that is true. What witnesses here, what witness is there who says, who, who provides any evidence other than speculation that Thurier said in March, keep Durr off the list. What evidence is there that Durr said in June, I'm going to have to hire Dr. Pearson because I know Durr is going to be on the list. Here's the theory. Durr is going to be on the list. He's such a great candidate. They're going to have no choice to interview him. And then I'm going to be exposed for my prior retaliation of him. Director Klinker knew all about Durr's settlement. Mr. Berman elicited that in deposition. There's nothing to hide. There's nothing nefarious here at all. It just, there's, there's simply nothing in the record to support the inferences that Dr. Durr urges here. The material facts are undisputed. There are some messy facts as is always the case, especially in employment cases where people are questioned two, four years after things happen. But I would submit your honor that as to the material facts here, Dr. Thurier didn't know he applied in March. She didn't know he had applied in June. She doesn't read, there's no reason for her to read the cert list. And if you look at the testimony, it's very clear. Dr. Thurier doesn't, it's not an email attachment where she can just scroll through it. She gets an email saying, here's a link to the cert list. Her assistant then sends it to the panel. There's 20 or 30 people on there. There's no reason for her to waste her time. She supervises 2000 people. There's no reason for her to go in there and start hunting through 20 or 30 people when she specifically has an interview panel. Their sole job is to will that whittle that down for her from 20 to 30 people to two or three. Then they say, here are our finalists. And then, and only then does she get involved. So there's simply nothing. Your legal position, do you dispute that? I'm asking this because I don't know the answer to it. Do you dispute that Dr. Thurier has made out a prima facie case on age and age and gender discrimination? No, your honor, not at all. And we would say, you know, as a first instance, he's really abandoned it here. I mean, there's just simply nothing in his, in his brief that I ask you if you dispute that he's made a prima facie case. And is your answer, you don't dispute it or you do dispute it? As to age, I mean, excuse me, I'm sorry. Dr. Pearson was born in 1971. She's over 40. So we would say your honor, he hasn't even made out a prima facie case there as far as yes, she's a female, he's a male. But then we still have to get into the question of pretext. So we, the secretary has provided a legitimate non-discriminatory reason. Dr. Durr has failed to show that it was pretext. So I would argue your honor as to age, no, but even if he had, he's abandoned it. And there's simply nothing in the record to support other than Dr. Pearson is a female. There's just nothing there. I mean, you can look at the hiring patterns of Dr. Thurier. And there've been plenty of folks like Dr. Pearson who were over 40 and plenty of males who were hired. Just to be sure I understand that you're saying, yes, he did make a prima facie case on both of those, but he loses at the pretext stage. Sure. For purposes of this argument, your honor, there's no quarrel there. Thank you. Sure. So your honor is again, as to the material facts here, there is simply no dispute. Dr. Durr has failed to show that the reason for hiring Dr. Pearson was pretextual and that the real reason was retaliation. And indeed has failed to show even that Dr. Thurier knew he had applied. We would ask this court to affirm the district court's grant of summary judgment in his favor. There are no further questions. Thank you. I like our courtroom with curtains. You definitely win the green screen award. It's better even than ours. Well, it's on the GSA website if you'd like to get it. Thank you. Thank you, Mr. Berman. You've just heard the agency's opening statement at trial and it's contradicted by every witness. Pearson says, I was never asked to apply. I was only told in April, I was doing quote, a pretty good job. Thurier admitted she never cleared her decision with the pentad. And you could derive inferences from that, that she was not, she didn't even have an inkling. This is an admission by Thurier. I didn't have an inkling to hire her. So let's go to dessert list is ready on June 22nd. Mr. Berman, can you point to any record evidence that Dr. Thurier did not think Dr. Pearson did a good job as acting chief of medicine? She only said pretty good job in April and there was no subsequent feedback. And that's your, that's the evidence you're pointing to. Well, there's more that she did not ask her to apply. If I was going to hire someone I thought was stellar, a wonderful lawyer, I would offer them the job and not wait for her application to come through. And the reason that's suspicious is if it they may not think the same way about Dr. Pearson. So you would not wait for the application to come through. And that's what makes an issue of fact because the pre-selection panel might say, well, Dr. Durer looks pretty good. He has been there 20 something years, head of nephrology, strong reputation. So again, that is not credible judge branch that you would wait for an application to come through. Here's the other thing about June 22nd, this conversation about, first of all, Siebold said she was surprised that selection was made that quick, which undercuts this theory about, oh, again, Thurier's testimony. I asked her if I could do it and she said, okay. Well, again, why would Siebold say I was surprised she made a selection that quick? As to how, because Pearson says I never told her I was applying and Thurier says I knew she applied either she, meaning Pearson, or HR told me. Again, why is Siebold telling her who's on the list? Again, that's not customary. So therefore the inference is what happened in March, Ms. Siebold said, oh, his application will fall off if he doesn't reapply, but Durer showed up on June 19th and said, here, I just found out that there's been a reposting. Here's my stuff. So Siebold felt duty bound, put him on the list. She couldn't keep him off and therefore they had that discussion on June 22nd. And Judge Martin's comment that there'd be no reason to discuss Durer being an applicant after this selection is made because Thurier can read the cert list herself and see who's on it. So therefore we believe that conversation occurred on June 22nd where Thurier was informed that both Pearson and Durer were on the cert list. And that's supported by Dr. Thurier's own testimony that either she or HR told me, because we know from Pearson, she did not tell Thurier she was applying. In fact, if Pearson felt the job was hers, she would have asked Dr. Thurier, hey, you know, what do you think? You know, do I have a chance? Should I apply? Because she initially told Thurier she didn't want to apply because she loved the emergency department. So we have questions in fact about why are they discussing the cert list in June before this election? And the inference is they also discussed it in March because after all, why would Thurier decide not to make a decision off the second cert list before even knowing who was on the cert list? Because the cert list was done at 2 p.m. on March, excuse me, the exact date, but Thurier applied 1149 on the 25th, and then of course some emails bounced back. That's why she said do not worry. Jury can weigh that and say do not worry means it's timely, and even Seabolt said Title 38 is so flexible that we can accept applications after because the selecting official can always make a direct hire even if your application is otherwise untimely. So the first question you asked me, Judge Branch, is the answer to this question is that there was no reason to keep Durr off the list. If Title 38 is so flexible, it's flexible in March as well, but yet he's kept off the list. So now you're hearing my closing argument, and this is a case where the agency says we failed to prove something at summary judgment. The only issue at summary judgment is our material facts in dispute and the material facts and the inferences therefrom. We have, their explanations amount to a web of untruthful statements. Our picture... Mr. Burma, you're going to have to save that closing argument, I think, or else wind it up because your time is up. Thank you. I hope I get to make it. All right. Take good care. Thank you. We've got your case. We'll take it under advisement.